[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS TO VACATE AND TO CONFIRM AN ARBITRATION AWARD
These two cases have been consolidated and are treated together simply as an application to vacate and an application to confirm the same arbitration award.
On June 12, 1991 the court received the final evidentiary materials in this matter.
FACTS
On April 6, 1986 Marianna O'Neill (Marianne) was driving a car owned by her father (Eugene) when it was struck by a car owned and operated by Raymond Petronis (Petronis). As a result she received serious personal injury. The Petronis' car was insured for liability by American Universal which paid the policy limit of $100,000 to Marianna.
Eugene's car was insured by the Aetna Casualty Surety Co. (Aetna). The Aetna policy provides $300,000 of underinsured coverage (UM coverage). Marianne was driving Eugene's car with his permission. Both Eugene and Marianne's mother were named insureds under the Aetna policy.
At the time of her accident, Marianne lived with her married sister and her brother-in-law (the Jazwiczses). The Jazwiczses were both named insureds under a CNA auto policy. The CNA policy provided UM coverage in the amount of $300,000 and listed two separate premiums for two separate automobiles and, therefore, CNA has a total of $600,000 of UM coverage available.
Marianna brought claims under the UM coverage of both the Aetna and the CNA policies. Each contains an "other insurance clause." The CNA clause is as follows:
 "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance. However, any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance." CT Page 6691
The Aetna clause states:
 "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance. However, any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance. "
The matter went to arbitration and the parties stipulated that Marianne was covered under both the Aetna and CNA policies, that the policy limits at the time of the accident were $300,000 for Aetna and $600,000 for CNA, respectively, and that there was a credit of $100,000 from the tort-feasor's payment. The issues submitted[1] for arbitration it seems to be agreed were the priority of coverage under the policies involved; apportionment of the credit and the amount of damages.
The arbitration panel determined that Marianne's damages were $400,000 and awarded her an additional $300,000 damages under the UM coverage. The panel determined Aetna to be primary and after giving Aetna the full $100,000 credit for the payment by the tortfeasor, found Aetna was obligated to pay the first $200,000 of UM coverage and CNA, the additional $100,000.
The awards are as follows:
"ARBITRATION AWARD
The undersigned arbitrators unanimously find that the claimant Marianne O'Neill has sustained fair, just and reasonable damages of $400,000.00 as a result of the April 6, 1986 automobile accident and is entitled to recover that amount from the Respondents, less the applicable $100,000.00 credit."
"ARBITRATION AWARD
The undersigned arbitrators have determined, based on the review of the briefs and the applicable law, that the coverage on the involved automobile is deemed to be primary and that the coverage on the household of the claimant is deemed to be excess, and, therefore the Aetna coverage should be exhausted (after application of the agreed upon credit) before CNA's obligation comes into play. The Aetna is therefore ordered to pay the Claimant the sum of $200,000.00 and CNA is ordered to pay the Claimant the sum of $100,000.00." CT Page 6692
The court will conduct a de novo review of the law as seemingly applied by the arbitrators. American Universal Ins. Co. v. Del Greco, 205 Conn. 178. No factual review is necessary and thus the absence of "a record of the arbitration proceedings" does not affect the court's work. Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 660-661.
What the parties refer to as the "other insurance" clauses seem to be identical. Each comes in two sentences. The parties seem to agree that it is the second sentence in each clause that the court should examine.
When the clauses in the policies are in conflict the court must first determine their intent and then, if possible, reconcile the two policies. The intent of each is clear enough. Each wants to be excess or last or not primary.
When in a conflict like this each party seeks to make its policy excess the best solution may be to probate the loss. Continental Ins. Co. v. Aetna Cas. and Sur. Co., 823 F.2d 708,711 (2nd Cir. 198).
This court does not necessarily believe that all of the language in the cases striking down "other insurance" clauses in UM coverage cases, e.g., Pecker v. Aetna Casualty Surety Co., 171 Conn. 443, is applicable to a contest, such as our present case, which is solely between two insurers. Cf. Eggleston v. Townsend, 326 F. Sup. 1212, 1218. It is now beyond question that such clauses are void as to the insured. Safeco Ins. Co. v. Ventre, 174 Conn. 329.
Both the other insurance clauses are of the same "type." In insurance policies there are three types, "escape", "excess" and "pro-rata."
An escape clause is one in which if other UM coverage exists the liability of the writer of the clause is extinguished. This is not the case with either of our two clauses.
A pro-rata clause is one which provides that if there is other collectible insurance on the loss, the writer of the clause is liable only for its pro-rata share of the loss. That is done by adding all the policy limits together and allocating the portion of that total which is contributed by the writer to the claim. Our two clauses are not pro-rata clauses.
An excess clause is one which provides that if there is other collectible insurance covering the loss the writer's policy is applicable if the total loss exceeds the limits of CT Page 6693 the primary policy. 8A Appleman, Insurance Law and Practice 4906, 4908, 4909 and 4910.
Both of our clauses are "excess." Thus the question is which is primary? Because they are in total conflict the best solution is to treat both as primary and prorate the loss. Atlantic Mutual Ins. Co. v. Trust Ins. Exchange, 797 F.2d 1288,1294-9 5th Cir. (1986). Continental Can Co. v. Hartford Acc. 
Indem. Co., 28 Cal.Rptr. 606, 609-612, 213 Cal.App.2d 78, (1963). In St. Paul Mercury Ins. Co. v. Underwriters at Lloyds of London, 365 F.2d 659 it was said
 "The contracts do contain language contemplating, in the abstract, the existence of other insurance. Each company attempted to accomplish essentially the same thing in such an eventuality, although different wording was used. Each sought to place itself in line after primary insurance had been exhausted, and so to protect the insured should such an eventuality come about. This is sufficient. It demonstrates that each had a sufficiently similar obligation to the insured that both should discharge it. This general purpose is disclosed by the policies, and is within the general intention of the parties. A further minute analysis of the particular words chosen by the different parties to express the intention does not assist greatly. The choices are infinite, and being those chosen in unrelated situations do not serve to closely define the relationship of two insurance carriers to each other . . .
 St. Paul by its "other insurance" clause did not place itself after Lloyds as it urges, nor did Lloyds make St. Paul primary insurance by the wording it used. Both companies undertook to provide excess coverage, and both were on an equal basis once the primary coverage was exhausted. There is no reason to distinguish between them.
Aetna shall pay two one-sevenths of the $300,000.00 or $85,714.28 and CNA shall pay five one-sevenths of the $300,000.00 or $214,285.72.
N. O'NEILL, J.