[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a direct action suit against the defendant insurance company claiming entitlement to underinsured motorist benefits.
The defendant has filed a Motion for Summary Judgment claiming that the plaintiff is prohibited as a matter of law from recovering under the liability and underinsured provisions of the same insurance policy.
Effective April 16, 1991 the insured, Joseph and Rita Flebeau contracted for an automobile insurance policy with the defendant, Metropolitan Property and Casualty Insurance company, hereinafter "Metropolitan" which policy covered three vehicles. The effective dates were April 16, 1991 to October 16, 1992.
On August 9, 1991 the insureds signed a form in which they chose a non-stacking uninsured motorist option at a reduced premium for which they received a refund check dated August 20, 1991.
The policy was amended as of August 9th, 1991. It covered three vehicles and listed separate premiums for personal injury, liability and physical damage and a single reduced premium for uninsured motorist bodily injury coverage CT Page 1108 of $100,000 per person and $300,000 per accident.
On August 24, 1991 the plaintiff was a passenger in a motor vehicle owned by Rita Flebeau and operated by David Krupienski who was operating with the permission of Mrs. Flebeau's daughter, also an insured under the policy. David Krupienski caused the vehicle to strike a series of guideposts on the side of the highway causing the plaintiff to sustain injuries.
The plaintiff claims that David Krupienski's negligence caused her to suffer multiple, severe and disabling injuries and to incur bills and expenses for medical and hospital attention. She made a claim for personal injuries against Krupienski, the operator, and the Flebeaus. The defendant provided liability coverage and settled the liability claim for the personal liability limit of $100,000.
The plaintiff now seeks to recover underinsured motorist damages under the same policy from which she received the liability settlement. She seeks to stack the coverage on the policy and receive coverage for the underinsured motorist claim for the difference between the claimed limit of $300,000 ($100,000 on each vehicle) and the $100,000 settlement i.e. $200,000.
It is the defendant's contention that the definition of an "uninsured highway vehicle," as contained within the text of the subject insurance policy, specifically excludes any vehicle "regularly furnished or available for use of the insureds; that this definition includes an "underinsured" motor vehicle; that such an exclusion from the policy coverage is permitted under the Regulations of State Agencies and it prohibits recovery of both liability and underinsured motorist benefits from the same policy.
The defendant cites Lowrey v. Valley Forge Ins. Co.,224 Conn. 152 (1992) as controlling.
The plaintiff seeks to distinguish this case on the basis that the driver in the Lowery case was the driver of the vehicle while in this case the driver was not an insured.
The defendant also claims that the total policy limit for uninsured motorist coverage is $100,000 because the policy is CT Page 1109 not subject to intrapolicy stacking.
Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Suarez v. Dickmont PlasticsCorporation, 229 Conn. 99, 105, 639 A.2d 507 (1994). "The party seeking summary judgment bears the burden of showing the nonexistence of any material fact." Cummings Lockwood v.Gray, 26 Conn. App. 293, 297, 600 A.2d 1040 (1991). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Scrapchansky v.Plainfield, 226 Conn. 446, 450, 627 A.2d 1329 (1993). "The test is whether a party would be entitled to a directed verdict on the same facts." Cummings Lockwood v. Gray, supra, 26 Conn. App. 297.
General Statutes § 38a-334-6(c)(2)(a), which sets out minimum provisions for automobile policies provides in pertinent part: "(c) Exclusions. The insurer's obligations to pay may be made inapplicable: . . . (2) if the uninsured motor vehicle is owned by (A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing . . . ."
The policy exclusion at issue in this case provides in pertinent part: "The term `underinsured highway vehicle' does not include: (a) a covered automobile or highway vehicle regularly furnished or available for the use of you or any relative." (Metropolitan Policy, p. 10.).
A comparison of the exclusion with the statute and regulation makes it clear that the exclusion was authorized by the statute and regulation.
The definition of "uninsured highway vehicle" contained in the policy encompasses both uninsured and underinsured motor vehicles. Lowrey v. Valley Forge, (supra p. 153 n. 1.).
The vehicle involved in the accident was a covered automobile under the policy and was regularly furnished or available to the named insureds on that policy. Therefore, the vehicle was not an "uninsured highway vehicle" under the CT Page 1110 policy.
The court in Lowrey explained the underlying rationale of underinsured motorist coverage:
 Liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. Underinsured coverage, however, is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. an [An] insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage; allowing underinsured coverage in the instant case would, in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage.
(Citations and internal quotation marks omitted.) Lowrey v.Valley Forge Ins. Co., supra, 224 Conn. p. 157.
The plain language of the policy exclusion makes it clear that the exclusion applies to the Flebeau vehicle involved in the accident. The vehicle at issue was owned by the Flebeaus, the named insureds under the policy issued by the defendant. Thus, the vehicle was not an "uninsured motor vehicle" and the plaintiff cannot prevail as a matter of law.
The distinction made by the plaintiff i.e. that the driver in Lowery was an insured does not change the outcome. The underinsured motorist coverage is for the benefit of the insured, not the passenger.
In addition to the preceding claim the defendant maintains that underinsured motorist coverage is unavailable since the policy provides for non-stacking which limits the uninsured coverage to $100,000 making the liability limits equal to the uninsured limits. CT Page 1111
In opposition, the plaintiff admits that the Flebeau's signed an uninsured motorist quotation page in which they opted for non-stacking underinsured motorist coverage. The plaintiff, however, argues that the defendant sent out the quotation page only two months prior to the date that the policy was scheduled to be renewed and claims that the timing of the change is suspect. The evidence does not support such a claim.
General Statutes § 38a-336, the uninsured motorist coverage statute, provides in pertinent part:
 (d) For the purposes of this section, an "underinsured motor vehicle" means a motor vehicle with respect to which the sum of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made . . . .
While General Statutes § 38a-336, the uninsured motorist statute, does not specifically address the issue of stacking" coverage, the Connecticut Supreme Court has held that the statute does not prohibit such aggregations. (Citations omitted.) Cohn v. Aetna Ins. Co., 213 Conn. 525,529, 569 A.2d 541 (1990). The court in Cohn explained the reason courts allow stacking:
 The reason for [stacking] is the common sense notion that such a result falls within the reasonable expectations of the parties to the contract . . . Stacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere.
Id., 529-30.
In all of the cases upholding the right of the insured to stack underinsured motorist coverage, however, the CT Page 1112 policyholder had paid a separate, additional premium for the additional coverage. Kent v. Middlesex Mutual Assurance Co.,226 Conn. 427, 436, 627 A.2d 1319 (1993). See, e.g.,Covenant Ins. Co. v. Coon, 220 Conn. 30, 35, 594 A.2d 977
(1991); Cohn v. Aetna Ins. Co., 213 Conn. 525, 530,569 A.2d 541 (1990); Dixon v. Empire Mutual Ins. Co., 189 Conn. 449,453, 456 A.2d 335 (1983); Safeco Ins. Co. v. Vetre, 174 Conn. 329,333-35, 387 A.2d 539 (1978).
The court in Kent v. Middlesex Mutual Assurance Co., supra, 226 Conn. 427, recently addressed the issue of intrapolicy stacking where a single premium is charged for the whole policy, and the policy and endorsement language make it clear that stacking is not available. In Kent, the policy's declaration page indicated that the policy charged only one premium for uninsured motorist coverage for the whole policy. Id., 430. Likewise, the policy language made it clear that stacking was not available. The Kent court held that where a single premium is charged for uninsured motorist coverage, and that policy clearly states that it is not subject to intrapolicy stacking so that the insured cannot have a reasonable expectation of stacked coverage, intra policy stacking is not permitted. Id. 439-40.
In the present case, the policy at issue unambiguously provides that the total limit is $100,000 per person for the whole policy. The declaration page of the policy charges only one premium and states that the limit of $100,000 per person/$300,000 per accident is the maximum policy limit. Both named insureds executed a non-stacking endorsement and checked the box that states the semi-annual policy premium for uninsured motorist coverage of $100,000/$300,000 and signed the following statement:
 I have read and understood the explanation of uninsured motorist coverage stacking and nonstacking options. I also understand that uninsured motorist coverage can equal my bodily injury liability limit and I have chosen the limits indicated above.
(Uninsured motorist quotation page.)
The policy premium is calculated to exclude stacking. The signed quotation page of the policy indicates that the CT Page 1113 semi-annual premium for stacked coverage would have been $127 greater for stacked coverage versus non-stacked coverage. The insureds also received a refund check of $48.00 representing the premium savings for the remainder of the policy period.
In the present case, as in Kent, the plaintiff could not have had a reasonable expectation of stacked coverage.
In the opinion of this court the uninsured limit was $100,000. Since that equaled the inability limit of $100,000, there was no underinsured coverage available.
The plaintiff cannot prevail as a matter of law and the court finds that there is no genuine issue as to any material fact.
Judgment may enter for the defendant.
Hale, J.